UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) CV 07-B-1344-S ) |
| INLAND SOUTHERN CORP., doing business as Inland Buildings, | ) ) ) ) |
| Defendant. | ) |

### MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 15.)[1] Plaintiff, Travelers Property Casualty Company of America, filed this subrogation action against defendant, Inland Southern Corporation, alleging that defendant negligently designed and fabricated the roof of the building of its insured, A.C. Legg Packing. Defendant contends that it is entitled to judgment as a matter of law because (1) its sales contract with a contractor on the building project limited its liability to exclude causes of actions based on negligence, and (2) plaintiff cannot prove that defendant breached any duty owed to plaintiff. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 15), is due to be granted.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I. **SUMMARY JUDGMENT STANDARD**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in its favor. *See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193

F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988))(emphasis added).

## II. STATEMENT OF FACTS

This is a subrogation case initiated by Traveler's Property Causality Company of America as subrogee of A.C. Legg Packing Company, Inc. (*See* doc. 1 ¶¶ 13-14.) The claim at issue in this case is for property damage arising out of Traveler's payment of policy benefits for damage to a building owned by A.C. Legg. (*Id.* ¶¶ 13-15.) The Complaint alleges that defendant negligently "design[ed] and fabricat[ed] . . . the subject building and the attachment and support systems for the building's roofing system," which causes the roof to fail "to withstand reasonable and foreseeable wind forces that were well within the designed, specified and represented capabilities of the building and roofing system." (*Id.* ¶¶ 17, 19.)

Strozier Construction was the general contractor for the building project. (Doc. 17, Ex. 2 ¶ 6.) Defendant supplied certain specified components used in the construction of subject building for A.C. Legg. (Doc. 15, Ex. 1 ¶ 4.) These materials were sold to Chorba Contracting. (*Id.* and ex. A.) Defendant hired Chorba to construct the building.[2] (Doc. 17, Ex. 2 ¶ 9; *id.*, Ex. 3 ¶ 9.) John Strozier of Strozier Construction, testified:

---

[2]Defendant disputes that it hired Chorba Constructing. (*See* doc. 20, Ex. 1 ¶¶ 3-4.) However, for purposes of summary judgment, the court assumes that defendant, and not A.C. Legg or Strozier Construction, hired Chorba.

4. Over a period of years prior to 2001, I had worked with Mr. James E. Purvis, president of A.C. Legg Packing Co., Inc., regarding locating real property for location of a new building and the design and construction of . . . that new building in Calera, Alabama to replace a facility occupied by that company in Birmingham, Alabama.

5. There were several important design considerations for the new building, including placement of pillars and beams to permit the most efficient layout of machinery and equipment used by A.C. Legg in the operation of its business.

6. In my discussions with Mr. Purvis, I advised that I would be the general contractor for the project but that I did not wish to erect the metal building. I was to be responsible for concrete pours of the foundations, floors, walls, preparing the road and parking lot for the location, office layout, inside finishing of the building, etc., and moving the equipment from the Birmingham facility to the new structure when it was complete.

7. The specific requirements for the building, including column layout, were provided by Bill Gill, a salesman with [defendant] who is now deceased, who then relayed the information to the design and pricing personnel at [defendant]. I also met with [defendant's] engineers regarding these requirements and I approved the layout of the columns as ultimately prepared by those engineers, most probably through Mr. Gill.

8. I advised Mr. Gill of the scope of involvement I would have in terms of constructing the building and told him that, on behalf of A.C. Legg Packing Co., Inc., I wanted to purchase the building project complete, insofar as erection of the metal building was concerned, from [defendant].

9. [Defendant] then selected Chorba Construct[ing] to erect the building.

10. To the best of my knowledge and recall, neither I nor A.C. Legg Packing Co., Inc. signed any contract with [defendant].

11. To the best of my knowledge and recall, I did not negotiate or accept any limitations of [defendant's] liability in connection with construction of the building and I was never aware that any such limitations were proposed in connection with this project.

12. I was not party to, and did not, to the best of my knowledge and recall, receive a copy of the contract between [defendant] and Chorba Construct[ing], as [defendant] was exclusively responsible for dealing with Chorba.

(Doc. 17, Ex. 2 ¶¶ 4-12.)

The sales contract between defendant and Chorba contained the following provision:

EXCLUSION OF CONSEQUENTIAL DAMAGES AND DISCLAIMER OF LIABILITY; BUYER'S INDEMNITY. . . . With respect to . . . breaches of this contract, Seller's liability shall in no event exceed the contract price. SELLER SHALL NOT BE SUBJECT TO AND DISCLAIMS: (1) ANY OTHER OBLIGATIONS OR LIABILITIES ARISING OUT OF BREACH OF CONTRACT OR OF WARRANTY[,] (2) ANY OBLIGATIONS WHATSOEVER ARISING FROM TORT CLAIMS (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR ARISING UNDER OTHER THEORIES OF LAW WITH RESPECT TO PRODUCTS SOLD OR SERVICES RENDERED BY SELLER, OR ANY UNDERTAKINGS, ACTS OR OMISSIONS RELATING THERETO, AND (3) ALL CONSEQUENTIAL, INCIDENTAL AND CONTINGENT DAMAGES WHATSOEVER. Without limiting the generality of the foregoing, Seller specifically disclaims any liability for penalties (including administrative penalties), special or punitive damages, damages for lost profits or revenues, loss of use of products or any associated equipment, cost of capital, facilities or services, downtime, shut-down or slow-down costs, or for any other types of economic loss. All the limitations and disclaimers contained in this paragraph and in the rest of this contract shall apply to claims of Buyer's customers or any third party asserted by Buyer against Seller for indemnity or contribution; as well as to direct claims of Buyer against Seller.

The prices for the goods and/or services on the face of this offer are Seller's price for such goods and/or services with all the above Disclaimer of Liabilities, including tort liability, enforceable against the Buyer. If Buyer desires for such Disclaimer to be amended so that Seller is liable for some or all of the matters disclaimed then Seller's price for the goods and/or services covered by this offer will be adjusted upward to reflect the risks which Buyer desires Seller to assume. Buyer understands that he is foregoing the possibility of, among other things, recovery from Seller of tort liability in exchange for Buyer obtaining a lower sales price for the goods and/or services.

> Buyer shall indemnify Seller against any and all losses, liabilities, damages and expenses (including, without limitation, attorneys fees and other costs of defending any action) which Seller may incur as a result of any claim by Buyer or others arising out of or in connection with the products and/or services sold hereunder, including, but not limited to, claims for injury (including death) to persons, and damage to property, and based on product or service defects not proven to have been caused solely by Seller's negligence.

(Doc. 15, Ex. 1, ex. A at 6.)

Neither A. C. Legg nor Strozier Construction negotiated, accepted or were aware of any limitations of liability that were imposed upon Chorba Constructing by defendant. (Doc. 17, Ex. 2 ¶¶ 11, 12; *id.*, Ex. 3 ¶¶ 12-13.) Neither A. C. Legg nor Strozier Construction signed any contract with defendant. (*Id.*, Ex. 2 ¶ 10; *id.*, Ex. 3 ¶ 10.)

A change order requesting use of the MBCI Ultra-Dek roofing system was issued by defendant pursuant to a request from Chorba Constructing. (Doc. 17, Ex. 11 at 14.) Documents relating to the MBCI Ultra-Dek roofing system state, "All metal roofs should be designed by a registered, professional engineer for loads specified by the governing code, including the higher pressures encountered at the edge zones of the roof." (Doc. 17, Ex. 7 at 1.) Also, the documents advise that the user of the Ultra-Dek roofing system should, "Contact MBCI for wind-uplift values." (*Id.* at 2.) Nothing in the record indicates that defendant's designers contacted MBCI during the design process.

According to John Underwood, Senior Vice-President of defendant's parent company, defendant "relied, in part, on the Underwriter's Laboratories publication entitled 'Roofing Materials and Systems 1999' to confirm that the MBCI roof panels exceeded the design

6

criteria." (Doc. 15, Ex. 1 ¶ 5.)  The 1999 UL Roofing Materials Systems Directory, with regard to roof deck constructions, states:

> Roof Deck Construction Classified for Uplift Resistance have been investigated for damageability from both external and internal pressures on the deck associated with high velocity winds.  Uplift Classifications are derived from tests conducted in accordance with the Standard for "tests for Uplift Resistance of Roof Assemblies", UL 580.  The UL 580 test method subjects a 10 ft by 10 ft test sample to various static and oscillating air pressures to index performance under uplift loads imposed on roof decks.
>
> . . .
>
> The test method provides a comparative measure of uplift resistance of roof deck construction.  The test evaluates the roof deck or roof deck assembly and its attachment to supports as well as the attachment of the roof covering, if used. . . .  Supporting structural members are evaluated only with respect to spacing and physical properties . . ., which could affect fastener attachment and necessary resistance to uplift forces.  Secondary supports (beams, purlins, joists, . . . etc.), connections of the assembly to the main structural members . . . and construction details along the edges of the roof and around openings in the roof . . . have not been evaluated unless specified in the construction. . . . Constructions including eaves/soffit have been evaluated for resistence to uplift pressures on the underside only.

(Doc. 20, Ex. 2, ex. A at 435-36.)  "The data published by Underwriter's Laboratories indicates that the roof panels had more than adequate strength to meet the design criteria." (Doc. 15, Ex. 1 ¶ 5; *see also id.*, Ex. 2, ex. 1.)

The building was substantially completed and in use sometime in 2001. (Doc. 1 ¶ 7.) On August 21, 2005, a wind storm caused damage to the roof of a building. (Doc. 1 ¶¶ 8-11.) According to plaintiff's expert, Eric Smith,

> My opinion is that the designer of this building failed to adequately design the attachment of [the] roof system to the underlying structure, and that

resulted in the failure of the roof at a less than code event[3] – during a less than code event, which resulted in not only damages to the roof, but interior damages to the structure.

(Doc. 15, Ex. 3 at 171-72 [footnote added].)

### III. DISCUSSION

Plaintiff alleges that the roof on A.C. Legg's building failed because of defendant's negligence in the design and fabrication of the roofing system. In Alabama, a plaintiff alleging negligence –

> must prove (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered a loss or injury; and (4) that the defendant's breach was the actual and proximate cause of the plaintiff's loss or injury. *Ford Motor Co. v. Burdeshaw*, 661 So. 2d 236, 238 (Ala. 1995). "'It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty,'" *Thompson v. Mindis Metals, Inc.*, 692 So. 2d 805, 807 (Ala. 1997)(quoting *Morton v. Prescott*, 564 So. 2d 913, 915 (Ala. 1990)), because "where there is no duty, there can be no negligence." *City of Bessemer v. Brantley*, 258 Ala. 675, 681, 65 So. 2d 160, 165 (1953). "'In Alabama, the existence of a duty is a strictly legal question to be determined by the court.'" *Pritchett v. ICN Med. Alliance, Inc.*, 938 So. 2d 933, 937 (Ala. 2006)(quoting *Taylor v. Smith*, 892 So. 2d 887, 891-92 (Ala. 2004)).

---

[3]The Building Code upon which the defendant relied requires that a building be designed to withstand an "80 mph fastest-mile wind." (*See* doc. 17, Ex. 4 at 5.) Plaintiff has presented evidence that the maximum wind gust during the storm that destroyed the roof were 40-60 mph. (Doc. 17, Ex. 4, ex. 8 at 2.) Defendant's meteorologist found that the storm could have winds that briefly exceeded 90 mph. (Doc. 15, Ex. 3, ex. 2 at 12.) He also found that "actual maximum wind velocity" during the storm was "impossible to determine" because of "the closeness of the storm to the [weather] radar and the gap between complete radar images." (*Id.*)

For purposes of summary judgment only, the court assumes that the wind gusts during the storm did not exceed "80 mph fastest mile."

8

*DiBiasi v. Joe Wheeler Elec. Membership Corp.* 988 So. 2d 454, 460 (Ala. 2008). "Whether there is a duty is the threshold inquiry in a negligence case." *Ledbetter v. United American Ins. Co.*, 624 So. 2d 1371, 1373 (Ala. 1993).

The evidence shows that defendant had a sales contract with Chorba Constructing that disclaimed liability to Chorba and its clients based on negligence. A.C. Legg, plaintiff's insured was not a party to that contract. Plaintiff argues:

> The contract upon which [defendant] relies shows on its face that it was made between [defendant] and Chorba Construct[ing]. It is undisputed that A. C. Legg Packing Company, Inc. was not a party to that contract. It is undisputed that A. C. Legg's general contractor, Strozier Construction, Inc., was not a party to that contract. It is undisputed that neither A. C. Legg nor Strozier accepted or ratified the limitations of liability in the contract between [defendant] and Chorba. It is undisputed that neither A. C. Legg nor Strozier had any knowledge of the limitations of liability in the contract between [defendant] and Chorba.
>
> It is undisputed that [defendant] was the entity that selected Chorba Construct[ing] to erect the metal building components of the structure. The change order relating to the MBCI roofing system was issued by Chorba to [defendant]. There is no evidence before this Court to demonstrate any privity or knowledge on the part of Strozier or A. C. Legg with respect to [defendant's] contractual limitations of liability.
>
> . . .
>
> The contractual provisions upon which [defendant] relies for its motion may well be fully effective with respect to Chorba Construct[ing], the company [defendant] retained to construct the metal building components of the structure at issue in this matter. Plaintiff, however, does not claim through Chorba Construct[ing]. In the absence of any evidence to show that either A. C. Legg Packing Company, Inc. or its general contractor, Strozier Construction Company, Inc. is a party to be charged with the contractual limitation of liability, those provisions are ineffective to limit the rights of plaintiff, the subrogated insurer of A. C. Legg.

(Doc. 17 at 8-9.)  While plaintiff correctly argues that A.C. Legg is not bound by the contractual provisions set forth in defendant's contract with Chorba, it has failed to point to any evidence or law that defendant owed A.C. Legg any duty with regard to the design and/or manufacture of the roofing system at issue.  As plaintiff argues, neither A.C. Legg nor its general contractor was a party to defendant's agreement with Chorba for the sale of the building, including the roofing system.  (*See* doc. 17 at 7.)  Moreover, plaintiff has presented evidence that A.C. Legg had no agreement with defendant at all.  (Doc. 17, Ex. 2 ¶ 10; *id.*, Ex. 3 ¶ 10.)

Under similar facts, the Alabama Supreme Court has held that the defendant subcontractor did not owe a duty to the plaintiff's insured, the property owner.  *See Cincinnati Ins. Companies v. Barber Insulation, Inc.*, 946 So. 2d 441, 445-49 (Ala. 2006). In that case, the property owner's insurer sued a subcontractor alleging the subcontractor responsible for insulation had acted negligently during the construction of the owner's home, which had caused a pipe to burst and damage the owner's property.  The court noted that the lack of a contract between the parties did not bar plaintiff's negligence claim if "defendant negligently perform[ed] his contract with knowledge that ***others are relying*** on [his] proper performance and the resulting harm is reasonably foreseeable." *Id*. at 446-47 (quoting *Berkel & Co. Contractors, Inc. v. Providence Hospital*, 454 So. 2d 496, 501 (Ala. 1984)(quoting *Federal Mogul Corp. v. Universal Constr. Co.*, 376 So. 2d 716, 721 (Ala. Civ. App.

1979))))(emphasis in *Barber Insulation*). The court found no duty between the subcontractor and the owner because the owner did not "rely" upon the subcontractor; it held:

> [The owner] testified by deposition that he had "never heard" of [the subcontractor] prior to this litigation. In fact, it was [the general contractor] – not the [owner] – that relied on [the subcontractor]. The [owner] relied on [the general contractor], not [the subcontractor]. The absence of reliance and consideration of the [other] factors[4] . . . militate against imposing liability on [the subcontractor].

*Id*. at 448-49 (footnote added). The Alabama Supreme Court held that the plaintiff had "cited no persuasive authority for imposing on [the subcontractor] a duty to the [owner] arising out of its . . . subcontract with [the general contractor]." *Id*. at 449.

This court finds the similarities between the facts of the *Barber Insulation* case and the facts of this case compel a finding of no duty on defendant to A.C. Legg. *See Riley v. Kennedy*, ___ U.S. ___, 128 S. Ct. 1970, 1985 (2008)("A State's highest court is unquestionably the ultimate expositor of state law. . . . [T]he prerogative of the Alabama Supreme Court to say what Alabama law is merits respect in federal forums.")(internal

---

[4]The court states that it considered the following factors:

> (1) The extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm.

*Barber Insulation, Inc.*, 946 So. 2d at 447, 449 (internal citations and quotations omitted). However, it did not elaborate on its consideration.

quotations and citations omitted).  Plaintiff has presented evidence that A.C. Legg and its general contractor did not have an agreement with defendant for the roofing system.  (Doc. 17, Ex. 2 ¶ 10; *id.*, Ex. 3 ¶ 10.)  Also, plaintiff has presented evidence that A.C. Legg or the general contractor did not have an agreement with Chorba Constructing.  (*Id.*, Ex. 2 ¶ 12; *id.*, Ex. 3 ¶ 11.)  Under the law of *Barber Insulation*, without such evidence of reliance, there is no legal duty.

Because the court finds, as a matter of law, the defendant owed no duty to plaintiff's insured, plaintiff's negligence claims are due to be dismissed.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 27th day of March, 2009.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE